**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

In re:

KING STATE COFFEE LLC,                      Case No. 8:24-bk-00576-CPM
                                                             Chapter 11 – Subchapter V

        Debtor.
_____/

**BAYFIRST NATIONAL BANK'S MOTION**
**FOR RELIEF FROM THE AUTOMATIC STAY**

Creditor, BayFirst National Bank, N.A. ("BayFirst"), by and through its undersigned counsel, moves this Court pursuant to 11 U.S.C. § 362(d)(1) and (2), and Federal Rule of Bankruptcy Procedure 4001(a) for the entry of an order modifying the automatic stay to allow BayFirst to exercise its rights under applicable non-bankruptcy law with respect to the business assets of the Debtor (the "Personal Property") and the Debtor's interest in real property commonly known as 520 East Floribraska Avenue, Tampa, Florida 33603 (the "Real Property," and together with the Personal Property, the "Property"), and in support thereof states as follows:

**SUMMARY**

The automatic stay should be lifted to allow BayFirst to exercise its rights against the Debtor's Property. This case has now been pending for approximately ten months and both the Debtor and its creditors, including BayFirst, are in a far worse position than when it began. The Debtor filed for Chapter 11 due to a lack of revenue attributed to major construction around its location. When the Debtor filed its petition, it averred that BayFirst's claims were fully secured by the Property and refused to pay adequate protection during the case. When it came time to file its Plan, the Debtor changed course and claimed BayFirst's collateral is worth substantially less than it claimed at the outset of the case. The appraisals directly contradict the Debtor's values.

Nevertheless, with the road construction issue still not resolved, the Real Property has sustained substantial hurricane damage and the Debtor has been less than forthcoming about the insurance claim status. Additionally, the Debtor ceased operations in October 2024 and went so far as to attempt an unauthorized "going out of business" sale.  With the collateral securing BayFirst's claims being eroded, and the Debtor's business having collapsed, BayFirst is entitled to relief from the automatic stay.

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 1334 and 157.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief requested herein is Section 362(d) of Title 11 of the United States Code, Sections 101, *et seq.* (the "Bankruptcy Code").

3. On February 2, 2024 (the "Petition Date"), King State Coffee LLC ("Debtor" or "King State") filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

## BACKGROUND

**A.    Loan History**

4. BayFirst, successor to First Home Bank, is a party to that certain SBA Note in the original amount of $630,000.00 (the "SBA Note"). To secure payment of the SBA Note, on or about November 21, 2017, King State executed and delivered to First Home Bank a Mortgage and Security Agreement which was recorded on November 27, 2017, in Official Records Book 25386, Pages 999-1012, Public Records of Hillsborough County, Florida (the "SBA Mortgage") which

encumbers the Real Property. King State also executed and delivered to First Home Bank a Security Agreement (the "SBA Security Agreement") concerning the Personal Property.[1]

5. BayFirst is also a party to that certain Promissory Note in the original amount of $350,000.00 (the "Second Note"). To secure payment of the Second Note, on or about September 15, 2023, King State executed and delivered to BayFirst a Commercial Security Agreement (the "Commercial Security Agreement").[2]

**B.  The King State Bankruptcy Case**

6. Based on the Debtor's schedules filed at the beginning of this case and the Debtor's original position that BayFirst was fully secured, the Debtor has not offered and BayFirst has not received any form of adequate protection during the pendency of this case.

7. On February 15, 2024, BayFirst timely filed the following proofs of claim:

   a. Claim 1-1 for $568,812.82 secured by the Real Property and its blanket lien on all of the Debtor's Personal Property ("Claim 1"); and

   b. Claim 2-2 for $347,463.59 secured by the Real Property and its blanket lien on all of the Debtor's Personal Property ("Claim 2").[3]

8. Pursuant to the interim cash collateral order (Doc. No. 26), BayFirst was granted "a perfected post-petition lien against cash collateral to the same extent and with the same validity and priority as its prepetition lien, without the need to file or execute any document as may otherwise be required under applicable non bankruptcy law." However, BayFirst has received no post-petition payment, or any other adequate protection, from the Debtor.

---

[1] True and correct copies of the SBA Note, SBA Mortgage, SBA Security Agreement, and all other documents that further evidence or secure the SBA Note are attached to Claim 1-1 in this case.

[2] True and correct copies of the Second Note, Commercial Security Agreement, and all other documents that further evidence or secure the Second Note are attached to Claim 2-2 in this case.

[3] BayFirst amended Claim 2 to clarify that – based on the Secured Indebtedness; Maximum Amount and Time Clause and the Future Advances Clause of the SBA Mortgage and SBA Security Agreement securing Claim 1, Claim 2 is also secured by the Real Property based on Florida statutes and case law. *See* Fla. Stat. § 697.04 and *Uransky v. First Federal Sav. & Loan Ass'n of Fort Myers*, 684 F.2d 750, 755-56 (11th Cir. 1982) (applying Florida law).

9. On August 23, 2024, the Debtor filed its Amended Chapter 11 Plan of Reorganization (the "Plan") (Doc. No. 76) in which the Debtor provides drastically lower valuations for the Property and now asserts that BayFirst is partially undersecured.

10. Indeed, in the Liquidation Analysis filed in support of the Plan, the Debtor asserts that the forced liquidation value of its Personal Property is $15,100.00 and the liquidation value of the Real Property is $500,000.00. *See* Doc. 76, Ex. C.

11. Yet, the Debtor has not offered BayFirst any form of adequate protection and said creditor is entitled to be protected.

**C.    Cessation of Operations, Unauthorized Closing Sale, Property Damage, and Insurance Claim**

12. Upon information and belief, on October 10, 2024, the Real Property was damaged by Hurricane Milton when the storm downed a tree on the Real Property resulting in a hole in the building. A true and correct photograph of the damage to the Real Property is attached hereto as **Exhibit A**.

13. Upon information and belief, as a result of the damage in October 2024, the Debtor ceased operations because of the property damage. In fact, around October 24, 2024, the Debtor posted on its Instagram account that it intended to conduct—without notice or Court approval—a "going out of business" sale before BayFirst intervened. The post has since been removed.

14. Upon information and belief, on or about November 8, 2024, the Debtor submitted a property damage claim to its insurer, Westchester Surplus Lines Insurance Company ("Westchester"), Policy No. F16263965, which was assigned Claim No. KY24K3037441 (the

"Claim"). Despite numerous requests, basic information regarding the Claim was not provided to counsel for BayFirst until November 19, 2024 (the "Claim Email").[4]

15. Nonetheless, the Debtor has failed and refused to provide any additional information on the Claim to BayFirst aside from the Claim date and number.

## ARGUMENT

**I.  Cause Exists to Grant Stay Relief Pursuant to 11 U.S.C. § 362(d)(1).**

16. Cause exists to terminate the automatic stay pursuant to § 362(d)(1) of the Bankruptcy Code on three grounds: (1) the lack of adequate protection of BayFirst's interest in the Property, (2) the declining value of the Real Property due to the Debtor's failure to repair and maintain the Real Property, and (3) the Debtor's bad faith in this case.

17. Section 362(d)(1) provides "the court shall grant relief from the stay . . . for cause, including lack of adequate protection in an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

18. "Cause" is not defined in the Bankruptcy Code, but rather is determined on a case-by-case basis. There are several factors that the Court may consider when determining whether "cause" exists, including: (1) "whether the debtor has acted in bad faith," (2) "the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code," and (3) "pending state court proceedings[.]" *Baker v. Bank of Am., N.A.*, No. 20-10780, 2020 WL 7706473, at *8 (11th Cir. Dec. 29, 2020) (citing *In re Feingold*, 730 F.3d 1268, 1277 (11th Cir. 2013) (citation and quotation marks omitted)); *see also In re Ellingsworth Residential Community Ass'n, Inc.*, No. 6:20-BK-01346-KSJ, 2020 WL 6803154, at *2 (Bankr. M.D. Fla. Oct. 16, 2020).

19. Additionally, the failure to make mortgage payments is one such situation that

---

[4] A true and correct copy of the email dated November 25, 2024, from Debtor's counsel to BayFirst's counsel with the Claim information is attached hereto as **Exhibit B**.

5

constitutes "cause" for relief from the automatic stay. *In re Schuessler*, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008); *see also In re Three Tuns, Inc.*, 35 B.R. 110 (Bankr. E.D. Pa. 1983) (secured creditor was granted relief from stay to foreclose its mortgage on debtor's real property because no post-petition mortgage payments had been made). This is especially true when "a debtor lacks the willingness; the current means; or a realistic, near-present ability to make contractual payments to the secured creditor." *Id.*

20. In this case, cause exists for granting BayFirst relief from the stay. Significantly, the Debtor has not made any payments on the SBA Loan or Second Loan since February 2024. In addition, the amounts owed under the Loans continue to accrue interest and other fees and expenses as this case continues without BayFirst receiving any payments. Simply put, cause exists to lift the stay because the Debtor continues to possess the Property while paying nothing toward what is owed to BayFirst under the Loan Documents.

21. Moreover, cause exists to lift the automatic stay due to the Debtor's failure to repair and inability to maintain the Real Property. According to the Hillsborough County Tax Collector's website, the 2024 property taxes, which are now due, total $7,881.86 and the Debtor has no funds to pay the taxes. Nor does the Debtor have the funds to pay future insurance premiums.

22. Additionally, Hurricane Milton caused a down tree on the Real Property which went through the building resulting in a hole. Now, nearly two months later, the Debtor still has not begun to repair the Real Property or recommenced business operations. BayFirst has not been provided any information regarding a time table for either repairs to its collateral or reopening of the business, despite repeated requests for the same.

23. Based on the Debtor's lack of communication and delays in repairing the Real Property, BayFirst is now concerned that the Debtor may not apply the insurance proceeds from

the Claim to fix the Real Property. This concern is also based on the Debtor's prior actions—including, but not limited to, the attempted unauthorized "going out of business" sale. Indeed, the only way to ensure that the Real Property is properly repaired and does not deteriorate any further is for the stay to be lifted to allow BayFirst to take possession of the Real Property and the insurance proceeds, and complete the necessary repairs.

24. Finally, cause exists to lift the automatic stay due to the Debtor's bad faith. *See* 11 U.S.C. § 362(d)(1); *In re Phoenix Piccadilly,* 849 F.2d 1383, 1394 (11th Cir. 1988); *In re State Street Houses, Inc.*, 356 F.3d 1345 (11th Cir. 2004). This case has now been pending for approximately ten (10) months and both the Debtor and its creditors, including BayFirst, are now in a worse position than when the case began. As detailed below, the Debtor's cash flow continues to decrease while the value of the Property securing BayFirst's Claims also remains in jeopardy.

25. Accordingly, cause exists for this Court to lift the automatic stay.

**II. Cause Exists to Grant Stay Relief Pursuant to 11 U.S.C. § 362(d)(2).**

26. Moreover, cause exists to terminate the automatic stay pursuant to § 362(d)(2) of the Bankruptcy Code since the Property is not necessary for an effective reorganization. In short, an effective reorganization is not possible in this case.

27. Section 362(d)(2) provides that "the court shall grant relief from the stay . . . with respect to a stay of an act against property under subsection (a) of this section, if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). Both elements of section 362(d)(2) must be satisfied before relief can be granted. *In re 412 Boardwalk, Inc.*, 520 B.R. 126, 134 (Bankr. M.D. Fla. 2014) (Funk, J.). "The Movant has the burden of demonstrating that a debtor has no equity, and the debtor has

the burden of demonstrating that the property is necessary to an effective reorganization." *Id.*; *see also* 11 U.S.C. § 362(g).

28. By the Debtor's own admission in its schedules, the Debtor's interest in the Real Property is worth approximately $700,000, whereas Claims 1-1 and 2-2 demonstrate the total amount due to BayFirst against the Real Property is $916,276.41. In addition, the Debtor asserts in its schedules that the Personal Property is worth approximately $373,885.52, whereas Claims 1-1 and 2-2 demonstrate the total amount due to BayFirst against the Personal Property is $916,276.41.

29. The second element of section 362(d)(2) requires the debtor to prove that the property is necessary for an "effective" reorganization. *In re Royal Palm Square Assocs.*, 124 B.R. 129, 132 (Bankr. M.D. Fla. 1991). A reasonable possibility of a successful reorganization must exist. *In re Pegasus Agency, Inc.,* 101 F.3d 882 (2d Cir. 1996). This requirement is satisfied where none of the following is true: (1) "the property has sufficient equity which could be refinanced and the plan could be funded from a new loan"; (2) "the property will be sold and the sale will produce sufficient monies to fund the plan of reorganization"; or (3) "the property is unique in character and it is essential to the survival of the reorganized entity." *Royal Palm*, 124 B.R. at 132. None of these are true in this case.

30. Retaining the Property serves no purpose and the Property is not necessary to an effective reorganization as reorganization is not possible—the Debtor is not operating and is not generating any revenues. No date to resume operations is known and there is no timetable for repairs to the Real Property either. Moreover, the root cause the Debtor's attributed its loss in

revenue to—construction around the Property—has not resolved and revenues did not improve prior to the hurricane damage and cessation of operations.[5]

31.  Here, Debtor's monthly operating reports to date demonstrate negative or minimal net cash flow and unpaid post-petition obligations before the cessation of operations. Administrative expenses in this case continue to accrue with no realistic possibility of paying them either.

| Document | Weekly Net Profit |
|---|---|
| Doc. No. 10, p. 25<br>Motion to Use Cash Collateral | 02/02/2024: $4,505.00<br>02/09/2024: $3,206.00<br>02/16/2024: $2,363.00<br>02/24/2024: $748.00 |
| Doc. No. 35, p. 2<br>Notice of Filing<br>Second Interim Cash Collateral Budget | 03/02/2024: -$288.00<br>03/09/2024: 1,407.00<br>03/16/2024: $2,255.00<br>03/23/2024: $2,285.00 |
|  | **Monthly Cash Flow** |
| Doc. No. 43<br>Monthly Operating Report: February 2024 | Negative Cash Flow<br>-$20,067.00 |
| Doc. No. 48<br>Monthly Operating Report: March 2024 | Net Cash Flow<br>$17,524.00 |
| Doc. No. 54<br>Monthly Operating Report: April 2024 | Net Cash Flow<br>$4,640.15 |
| Doc. No. 66<br>Monthly Operating Report: May 2024 | Negative Cash Flow<br>-$15,440.65 |
| Doc. No. 68<br>Monthly Operating Report: June 2024 | Net Cash Flow<br>$14,696.50 |
| Doc. No. 74<br>Monthly Operating Report: July 2024 | Net Cash Flow<br>$9,490.57 |
| Doc. No. 85<br>Monthly Operating Report: August 2024 | Negative Cash Flow<br>-$12,699.61 |
| Doc. No. 93<br>Monthly Operating Report: September 2024 | Net Cash Flow<br>$2,098.88 |
| Doc. No. 102<br>Monthly Operating Report: October 2024 | Negative Cash Flow<br>-$16,026.15 |

---

[5] According to the Debtor's Case Management Summary (Doc. No. 4), construction on Floribraska Avenue hurt the Debtor's operations and was a reason for the filing of this case. *See* Case Management Summary, at 1-2. The Debtor expected the construction to be completed by March 31, 2024. *See id.* However, according to the City of Tampa website, the construction project on Floribraska Avenue is still in the procurement phase with a planned end date of October 31, 2025. *See* TAMPA.GOV, https://www.tampa.gov/project/trans20026 (last visited Dec. 6, 2024).

32. Similarly, Debtor's financial projections filed in support of the Plan demonstrate minimal to negative projected net income month to month and fail to include any monthly payments to secured creditors. There do not appear to be sufficient funds to successfully reorganize and keep the Debtor operational, therefore, it is unnecessary for the Debtor to retain the Property. As such, cause exists for this Court to lift the automatic stay.

33. BayFirst further requests that the Court waive the 14-day stay of any order granting relief from the automatic stay pursuant to Bankruptcy Rule 4001(a)(3) so that BayFirst can recover the Property without further delay.

**WHEREFORE**, BayFirst respectfully requests that this Court enter an order (a) granting BayFirst relief from the automatic stay to exercise its rights to complete a foreclosure of the Real and Personal Property through issuance of a certificate of title, and (b) granting such other and further relief as this Court deems appropriate.

Dated: December 6, 2024.

/s/ Stephanie C. Lieb
Stephanie C. Lieb, Esq.
Florida Bar No. 0031806
TRENAM, KEMKER, SCHARF, BARKIN, FRYE, O'NEILL & MULLIS, P.A.
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602
Telephone: (813) 227-7469
Email: slieb@trenam.com
*Counsel to BayFirst National Bank*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 6, 2024, a true and correct copy of the foregoing was furnished by CM/ECF to all registered CM/ECF recipients and the Local Rule 1007-2 parties-in interest, and by first class U.S. Mail, postage prepaid to: King State Coffee LLC, 16703 E Course Drive, Tampa, FL 33624.

/s/ Stephanie C. Lieb
Stephanie C. Lieb

| | | |
|---|---|---|
| Label Matrix for local noticing<br>113A-8<br>Case 8:24-bk-00576-CPM<br>Middle District of Florida<br>Tampa<br>Fri Dec  6 10:12:08 EST 2024 | BayFirst National Bank, N.A.<br>c/o Stephanie C. Lieb, Esq.<br>101 East Kennedy Boulevard, Suite 2700<br>Tampa, Florida 33602-5150 | BayFirst National Bank, NA<br>700 Central Avenue<br>Saint Petersburg, FL 33701-3631 |
| Blue Bridge Financial, LLC<br>11921 Freedom Drive<br>Suite 1130<br>Reston, VA 20190-6225 | Hillsborough County Tax Collector<br>c/o Brian T. FitzGerald, Esq.<br>Hillsborough County Attorney Office<br>P.O. Box 1110, 27th Floor<br>Tampa, FL 33601-1110 | IPFS Corporation<br>30 Montgomery Street<br>Suite 501<br>Jersey City, NJ 07302-3821 |
| Keg Connect, LLC<br>701 Dr. MLK Jr. St. S.<br>Saint Petersburg, FL 33705-1922 | Nancy C Millan Tax Collector<br>C/O Brian T Fitzgerald, Atty 27th FL<br>Po Box 1110<br>Tampa, FL  33601-1110 | Pawee<br>550 1st Avenue N.<br>Saint Petersburg, FL 33701-3702 |
| SystmatiQ Accounting<br>Attn: Neeta Hemlall<br>390 Myrtle Ave<br>Brooklyn, NY 11205-2411 | | |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Cavoya Coffee

End of Label Matrix
Mailable recipients     9
Bypassed recipients     1
Total                  10

# **<u>EXHIBIT A</u>**



# **EXHIBIT B**

| | |
|---|---|
| **From:** | Michael Stavros <mstavros@jennislaw.com> |
| **Sent:** | Monday, November 25, 2024 2:46 PM |
| **To:** | Stephanie C. Lieb |
| **Subject:** | FW: Supplemental ACV Payment Breakdown: KY24K3037441 \| 10113 - WESTCHESTER SURPLUS LINES INSURANCE COMPANY |
| **Attachments:** | HKA Report.pdf; Estimate_1482_from_UTF8QASharperImageTreeServiceE28099sInc.pdf; Crawford GTS - Structure Estimate - Tree Removal Inv.pdf; Statement of Loss_King State Coffee.pdf |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you know the content is safe.

Steph,

Attached is what I have received from my client. I was unaware that Nicole did not reach out to you regarding confirmation, Terresa had mentioned continuing in court and that her office would take care of the motion and we did not object. I still haven't heard from them as to any potential objections. Let me know if you want to discuss later today.

Regards,



Michael Stavros
Attorney
**Jennis Morse**
606 East Madison Street
Tampa, FL  33602
Email: mstavros@jennislaw.com
Cell Phone: 321-795-8196
Web: www.jennislaw.com

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient.  If you received this in error, please do not read, distribute, or take action in reliance upon this message.  Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system.  We do not waive lawyer-client privilege, trial preparation privilege or any other privileges by the transmission of this message.

> Begin forwarded message:

**From:** "Fry, Richard [CTR]" <Richard.Fry1@chubb.com>
**Subject: Supplemental ACV Payment Breakdown: KY24K3037441 | 10113 - WESTCHESTER SURPLUS LINES INSURANCE COMPANY**
**Date:** November 19, 2024 at 5:13:50 PM CST
**To:** Tim Mctague <tim@king-state.com>, "jenmcdonald@merchantinsurancesolutions.com" <jenmcdonald@merchantinsurancesolutions.com>
**Cc:** Mike Fichtelberg <Michael_Fichtelberg@us.crawco.com>, David Kee <David.Kee@us.crawco.com>, Property Reports <propertyreports@chubb.com>

| | |
|---|---|
| Insured Name: | KING STATE COFFEE LLC |
| Policy Number: | F16263965 |
| Claim Number: | KY24K3037441 |
| Date of Loss: | 10/10/2024 |
| Line of Business: | PROPERTY |
| Loss Location: | 520 EAST FLORIBRASKA, TAMPA, FLORIDA, HILLSBOROUGH COUNTY, UNITED STATES, 33603. |
| Issuing Company: | 10113 - WESTCHESTER SURPLUS LINES INSURANCE COMPANY |

Dear Mr. McTague;

Westchester Surplus Lines Insurance Company's ("Chubb's") has completed its factual investigation which revealed windstorm related damages to the property. We have received the report from HKA Engineering after they inspected the property, and they confirmed the damages to the property.

The field adjuster prepared an estimate for the ensuing damages based on the report from the engineer. The estimate included the initial tree removal charges that were approved.

Please review the estimate and please forward any estimates that you obtain that are different then what we allowed, so that they can be reviewed by the field adjuster.

The covered damages are totals are as follows:

| | |
|---:|---|
| $28,223.28 | Estimate of Covered Damages |
| ($626.02) | Less Recoverable Depreciation |
| ($318.03) | Less Non-Recoverable Depreciation |
| $27,279.23 | Net Indemnity |
| ($15,000.00) | Less Applicable Deductible |
| **$12,279.23** | Net Claim Due |
| ($8,500.00) | Less Prior Payment |
| $3,779.23 | Supplemental ACV Payment |

Regarding the withheld recoverable depreciation. Your policy affords replacement cost coverage. However, for you to be entitled to this coverage you must first demonstrate that the property was repaired or replaced. This can be demonstrated with a signed contract with start date from your contractor and copies of invoice, canceled check, or other proof of payment confirming your property's replacement. We will review this information with your actual cash value payment and applicable deductible to issue any balance due.

We would like you to know that acceptance of this check is not a release, nor a waiver of any of your rights under the policy. Your claim can be re-evaluated and/or re-opened if appropriate. By cashing the

check that will follow via U.S. Mail, you are not waiving your rights to present claims for additional damages or pricing concerns related to this loss. If you receive a contractors estimate that is higher than the provided estimate, please contact us prior to initiating any work.

Field adjuster, Mr. David Kee and yours truly all are and will remain at your service. Please contact us directly if you have any questions or if there is anything that we may have overlooked.

Please be aware that Chubb reserves all rights with respect to the attached referenced provisions, as well as all other rights, remedies and defenses under the Policy, at law and in equity. These reservations include, but are not limited to, the right to amend this communication to address additional coverage issues as they may arise, based upon the Policy and/or any additional facts that may come to Chubb's attention. Nothing contained in this communication, and no action on our part or the part of its agents, attorneys, employees/contract employees, independent adjusters, or experts engaged on our behalf in investigating and adjusting your claim, should be construed as an admission of coverage or as a waiver of any right, remedy or defense that may be available to Chubb.

Thank you once again sir.



**Richard Fry**
Property Claim Analyst
FL Adjusters License - #W523097-All Lines

P.O. Box 716
Portland, ME 04104
(404) 905-9875
E: **Richard.Fry1@Chubb.com**

I strive to take care of all issues and questions directly with you.  If you need to speak with my manager, Mr. Dwight Ennis you can reach him at (404) 905-6029 or via email Dwight.Ennis@Chubb.com

You may also contact our Claims Service Center at (800) 252-4670 for any general inquiries.

---

This email (including any attachments) is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, and/or protected by the attorney-client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, printing, forwarding or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.