**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

KING STATE COFFEE, LLC

                Debtor.

_____/

Case No: 8:24-bk-00576-CPM

Chapter 11

**DEBTOR'S MOTION TO AUTHORIZE THE PRIVATE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES**

---

**NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at **Sam M. Gibbons U.S. Courthouse, 801 N. Florida Avenue, Fifth Floor, Room 555, Tampa, Florida 33602**, within 21 days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.

---

King State Coffee, LLC (the "Debtor"), by counsel and pursuant to Sections 105, 363(b) and (f), and 1123 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2002, 4001 and 6004, hereby files this Motion seeking to **(i)** authorize the private sale of real property located at 520 E Floribraska Ave, Tampa FL 33603 more particularly described on **Exhibit A** (the "Property") and **(ii)** shorten any notice periods proscribed by Federal Rule of Bankruptcy Procedure 2002 and 6004, to the extent necessary. In support of this Motion, the Debtor states as follows:

**Background**

**1.** On February 2, 2024 (the "Petition Date"), the Debtor filed its *Voluntary Petition for Non-Individuals Filing for Bankruptcy* (Doc. No. 1).

**2.** The Debtor is continuing in possession of its property as debtor-in-possession pursuant to Section 1107 and 1108 of the Bankruptcy Code.

**3.** At hearing on January 21, 2025, the Debtor noted its intention to sell the Property pursuant to an amended plan of reorganization that would provide for liquidation of the debtors real property.

**4.** On February 4, 2024, the Debtor filed its *Amended Plan of Reorganization* (Doc. 118) providing for the liquidation of the real property in a to be filed sale motion and pursuant to the terms of the *Commercial Contract* (the "PSA")[1].

## THE SALE

**5.** The Debtor had originally planned to lease its Property to a new tenant, Orlando Group Investments, LLC d/b/a Foxtail Coffee ("Foxtail") hoping to operate a coffee shop at the Property.

**6.** During the course of negotiations for the new lease, Foxtail offered to purchase the Property. The parties contemplated a sale for more than the recent appraisal provided to the Debtor by BayFirst National Bank ("BayFirst"), the secured party with a mortgage on the property.

**7.** The material terms to the sale contemplated by the *Commercial Contract* (the "Sale") are:

   **A.** **Purchase Price:** The purchase price is $950,000.00,

---

[1] Attached hereto as **Exhibit "A."**

  **B.** **Free and Clear:** The Property is being sold free and clear of all liens, claims, encumbrances and any other interests (collectively, the "<u>Interest</u>") other than those identified below or as described in the Amended Plan,

  **C.** **Inspection:** 30 days from Effective Date,

  **D.** **Closing:** The closing for the Sale shall take place on or before forty-five (45) days from the Effective Date.

8. To the extent any of the above conflicts with the PSA, the language of the PSA controls.

9. The Sale is an "arm's length" transaction, and Foxtail is not affiliated with the Debtor.

10. The Sale to Foxtail is a private sale. A private sale without additional marketing auction is reasonable given the prior appraisal presented by BayFirst. An auction would not likely realize a higher net value to the estate and the Debtor's creditors given the prior appraisals, expense or cost of the marketing and auction process, and damage to roof. Notwithstanding the foregoing, the Sale is subject to higher and better offers tendered prior to the Closing Date on the condition that **(1)** such offers must be in an amount $25,000 higher than the current purchase price of $950,000.00, **(2)** new buyer's payment of non-refundable earnest money deposit of $10,000 to the Escrow Agent prior to the Closing Date, and **(3)** be non-contingent on third party financing or have such financing arranged prior to the Closing Date.

11. The Debtor's efforts to market the Property resulted in the proposed Sale for over the appraised and is reasonable in light of the circumstances. While the Sale is subject to higher and better offers, the proceeding paragraphs shall not impose further duty on the Debtor to market the Property or solicit offers on the Property prior to the Closing Date.

## Basis for Relief Requested

12. The Debtor believes the private sale of the Property as described in this Motion is in the best interest of the estate and its creditors.

13. Section 363(b) of the Bankruptcy Code provides that a Debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Moreover, Section 105(a) of the Bankruptcy Code states "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

14. With respect to the Property, Section 363(f) of the Bankruptcy Code authorizes the Debtor, upon approval of this Court, to sell property under Section 363(b) "free and clear of any interest in such property of an entity" if at least one of the following conditions is satisfied:

    A.    Applicable non-bankruptcy law permits sale of such property free and clear of such interest.

    B.    Such entity consents.

    C.    Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property.

    D.    Such interest is in bona fide dispute. Or,

    E.    Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

15. The Debtor submits that the Property can be sold free and clear of interest because, either the purchase price will greater than the combined asserted amounts of the creditors' liens against the Property satisfying Section 363(f)(3) or BayFirst will be allowed to credit bid pursuant to 363(f)(5) up to an amount of $800,000 consistent with its treatment under the Amended Plan.

16. The Debtor may also sell the Property pursuant to 363 and 1123 with the consent of BayFirst.

**17.** The Debtor may file a motion to determine secured status which would affect the secured claim amount of BayFirst, and the filing of this Motion is without prejudice to same.

**18.** BayFirst shall receive net $800,000 from the proceeds of the Sale. If the Sale to Foxtail or a higher and better offer does not close, the Debtor will amend the Motion or file a new motion to sell the real property.

**WHEREFORE,** the Debtor requests this Court consider this Motion and an enter an order **(i)** granting this Motion, **(ii)** authorizing the private sale of the Property to Foxtail, **(iii)** shortening any notice periods proscribed by Federal Rule of Bankruptcy Procedure 2002, **(iv)** for good faith findings pursuant to 11 U.S.C. § 363(m) **(v)** for such other and further relief as to the Court may seem just.

Dated this 20th day of February 2025.

/s/ Michael A. Stavros
David S. Jennis
Florida Bar No. 775940
Michael A. Stavros
Florida Bar No. 1003851
**Jennis Morse**
606 East Madison Street
Tampa, Florida 33602
Telephone: (813) 229-2800
Email: djennis@jennislaw.com
Mstavros@jennislaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via CM/ECF electronic service on February 20, 2025 to **United States Trustee**, **Michael Markham** Subchapter V Trustee, **Stephanie Lieb**, counsel for BayFirst and to those parties that receive service via CM/ECF in the ordinary course of business; and, via U.S. Mail on February 21, 2025 to those parties on the attached **L.B.R. 1007-2 Parties in Interest List** who do not receive service notices via CM/ECF.

/s/ Michael A. Stavros
Michael A. Stavros



Commercial Contract

1* **1. PARTIES AND PROPERTY:** ORLANDO GROUP INVESTMENTS, LLC, a Florida limited liability company, d/b/a Foxtail Coffee ("Buyer")
2* agrees to buy and KING STATE COFFEE, LLC, a Florida limited liability company ("Seller")
3* agrees to sell the property as: Street Address: 520 East Floribraska Avenue, Tampa, Florida 33605
4* _____
5* Legal Description: See attached Exhibit A
6* Hillsborough County Tax ID 182941-0100

7* and the following Personal Property: _____
8* _____
9  (all collectively referred to as the "Property") on the terms and conditions set forth below.

10* **2. PURCHASE PRICE:** $ 950,000.00
11* (a) Deposit held in escrow by Gardner Brewer Hudson, P.A. $ 10,000.00
12  ("Escrow Agent") (checks are subject to actual and final collection)
13* Escrow Agent's address: 400 N. Ashley Drive, Suite 11, Tampa, Florida 33602  Phone: _____
14* (b) Additional deposit to be made to Escrow Agent within ____ days after Effective Date  $ 0
15* (c) Additional deposit to be made to Escrow Agent within ____ days after Effective Date  $ 0
16* (d) Total financing (see Paragraph 5)  $ 0
17* (e) Other _____  $ 0
18  (f) All deposits will be credited to the purchase price at closing. Balance to close, subject
19* to adjustments and prorations, to be paid with locally drawn cashier's or official bank  $ 940,000.00
20  check(s) or wire transfer.

21  **3. TIME FOR ACCEPTANCE; EFFECTIVE DATE; COMPUTATION OF TIME:** Unless this offer is signed by **Seller**
22* and **Buyer** and an executed copy delivered to all parties on or before February 14, 2025 , this offer will be
23  withdrawn and the **Buyer's** deposit, if any, will be returned. The time for acceptance of any counter offer will be 3
24  days from the date the counter offer is delivered. **The "Effective Date" of this Contract is the date on which the**
25  **last one of the Seller and Buyer has signed or initialed and delivered this offer or the final counter offer.**
26  Calendar days will be used when computing time periods, except time periods of 5 days or less. Time periods of 5
27  days or less will be computed without including Saturday, Sunday, or national legal holidays. Any time period ending
28  on a Saturday, Sunday, or national legal holiday will extend until 5:00 p.m. of the next business day. **Time is of the**
29  **essence in this Contract.**

30  **4. CLOSING DATE AND LOCATION:**
31* (a) **Closing Date:** This transaction will be closed on the date which is 45 days from the Effective Date (Closing Date), unless specifically
32  extended by other provisions of this Contract. The Closing Date will prevail over all other time periods including, but
33  not limited to, Financing and Due Diligence periods. In the event insurance underwriting is suspended on Closing
34  Date and **Buyer** is unable to obtain property insurance, **Buyer** may postpone closing up to 5 days after the
35  insurance underwriting suspension is lifted.

36* Buyer (____)(____) and Seller (____)(____) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.

CC-4  Rev. 12/10  ©2010  Florida Association of REALTORS®  All Rights Reserved

Serial#: 098391-500140-8990181

formsimplicity

37*   **(b) Location:** Closing will take place in _____ County, Florida. (If left blank, closing
38    will take place in the county where the property is located.) Closing may be conducted by mail or electronic means.

39   **5. THIRD PARTY FINANCING:**

40*  **BUYER'S OBLIGATION:** Within  5  days (5 days if left blank) after Effective Date, **Buyer** will apply for third party
41*  financing in an amount not to exceed  60  % of the purchase price or $ 570,000.00 , with a fixed interest rate
42*  not to exceed  10  % per year with an initial variable interest rate not to exceed  7.5  %, with points or commitment
43*  or loan fees not to exceed  5  % of the principal amount, for a term of  10  years, and amortized over  10
44   years, with additional terms as follows:
45* _____.
46   **Buyer** will timely provide any and all credit, employment, financial and other information reasonably required by any
47*  lender. **Buyer** will use good faith and reasonable diligence to (i) obtain Loan Approval within  45  days (45 days if
48   left blank) from Effective Date (Loan Approval Date), (ii) satisfy terms and conditions of the Loan Approval, and
49   (iii) close the loan. **Buyer** will keep **Seller** and Broker fully informed about loan application status and authorizes the
50   mortgage broker and lender to disclose all such information to **Seller** and Broker. **Buyer** will notify **Seller** immediately
51   upon obtaining financing or being rejected by a lender. **CANCELLATION:** If **Buyer**, after using good faith and
52*  reasonable diligence, fails to obtain Loan Approval by Loan Approval Date, **Buyer** may within  3  days (3 days if left
53   blank) deliver written notice to **Seller** stating **Buyer** either waives this financing contingency or cancels this Contract.
54   If **Buyer** does neither, then **Seller** may cancel this Contract by delivering written notice to **Buyer** at any time
55   thereafter. Unless this financing contingency has been waived, this Contract shall remain subject to the
56   satisfaction, by closing, of those conditions of Loan Approval related to the Property. **DEPOSIT(S) (for purposes**
57   **of Paragraph 5 only):** If **Buyer** has used good faith and reasonable diligence but does not obtain Loan
58   Approval by Loan Approval Date and thereafter either party elects to cancel this Contract as set forth above or the
59   lender fails or refuses to close on or before the Closing Date without fault on **Buyer's** part, the Deposit(s) shall be
60   returned to **Buyer**, whereupon both parties will be released from all further obligations under this Contract, except for
61   obligations stated herein as surviving the termination of this Contract. If neither party elects to terminate this Contract
62   as set forth above or **Buyer** fails to use good faith or reasonable diligence as set forth above, **Seller** will be entitled to
63   retain the Deposit(s) if the transaction does not close.

64*  **6. TITLE: Seller** has the legal capacity to and will convey marketable title to the Property by ■ statutory warranty
65*  deed ☐ other _____ , free of liens, easements and encumbrances of record or
66   known to **Seller**, but subject to property taxes for the year of closing; covenants, restrictions and public utility
67   easements of record; existing zoning and governmental regulations; and (list any other matters to which title will be
68*  subject) _____ ;
69* _____
70   provided there exists at closing no violation of the foregoing and none of them prevents **Buyer's** intended use of the
71*  Property as _____ .

72   **(a) Evidence of Title:** The party who pays the premium for the title insurance policy will select the closing agent
73*  and pay for the title search and closing services. **Seller** will, at (check one) ■ **Seller's** ☐ **Buyer's** expense and
74*  within  20  days ■ after Effective Date ☐ or at least ____ days before Closing Date deliver to **Buyer** (check one)
75*  ■ (i.) a title insurance commitment by a Florida licensed title insurer setting forth those matters to be
76   discharged by **Seller** at or before Closing and, upon **Buyer** recording the deed, an owner's policy in the amount
77   of the purchase price for fee simple title subject only to exceptions stated above. If **Buyer** is paying for the
78   evidence of title and **Seller** has an owner's policy, **Seller** will deliver a copy to **Buyer** within 15 days after
79   Effective Date.
80*  ☐ (ii.) an abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an
81   existing firm. However, if such an abstract is not available to **Seller**, then a prior owner's title policy acceptable
82   to the proposed insurer as a base for reissuance of coverage may be used. The prior policy will include copies
83   of all policy exceptions and an update in a format acceptable to **Buyer** from the policy effective date and
84   certified to **Buyer** or **Buyer's** closing agent together with copies of all documents recited in the prior policy and
85   in the update. If such an abstract or prior policy is not available to **Seller** then (i.) above will be the evidence of
86   title.

87   **(b) Title Examination: Buyer** will, within 15 days from receipt of the evidence of title deliver written notice to **Seller**
88   of title defects. Title will be deemed acceptable to **Buyer** if (1) **Buyer** fails to deliver proper notice of defects or

89*  Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 2 of 8 Pages.

CC-4   Rev. 12/10   ©2010   Florida Association of REALTORS®   All Rights Reserved
Serial#: 098391-500140-8990181                                                                                      formsimplicity

90*    (2) **Buyer** delivers proper written notice and **Seller** cures the defects within ___ days from receipt of the notice
91    ("Curative Period"). If the defects are cured within the Curative Period, closing will occur within 10 days from receipt
92    by **Buyer** of notice of such curing. **Seller** may elect not to cure defects if **Seller** reasonably believes any defect
93    cannot be cured within the Curative Period. If the defects are not cured within the Curative Period, **Buyer** will have
94    10 days from receipt of notice of **Seller's** inability to cure the defects to elect whether to terminate this Contract or
95    accept title subject to existing defects and close the transaction without reduction in purchase price.

96   **(c) Survey:** (check applicable provisions below)
97*    ☐ (i.)**Seller** will, within _____ days from Effective Date, deliver to **Buyer** copies of prior surveys, plans,
98    specifications, and engineering documents, if any, and the following documents relevant to this transaction:
99*    _____,
100    prepared for **Seller** or in **Seller's** possession, which show all currently existing structures. In the event this
101    transaction does not close, all documents provided by **Seller** will be returned to **Seller** within 10 days from the
102    date this Contract is terminated.
103*    ■ **Buyer** will, at ☐ **Seller's** ■ **Buyer's** expense and within the time period allowed to deliver and examine title
104    evidence, obtain a current certified survey of the Property from a registered surveyor. If the survey reveals
105*    encroachments on the Property or that the improvements encroach on the lands of another, ■ **Buyer** will
106*    accept the Property with existing encroachments ☐ such encroachments will constitute a title defect to be
107    cured within the Curative Period.

108   **(d) Ingress and Egress: Seller** warrants that the Property presently has ingress and egress.

109 **7. PROPERTY CONDITION: Seller** will deliver the Property to **Buyer** at the time agreed in its present "as is"
110 condition, ordinary wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition.
111 **Seller** makes no warranties other than marketability of title. In the event that the condition of the Property has
112 materially changed since the expiration of the Due Diligence Period, **Buyer** may elect to terminate the Contract and
113 receive a refund of any and all deposits paid, plus interest, if applicable. By accepting the Property "as is", **Buyer**
114 waives all claims against **Seller** for any defects in the Property. (Check **(a)** or **(b)**)

115*   ☐ **(a) As Is: Buyer** has inspected the Property or waives any right to inspect and accepts the Property in its "as is"
116   condition.

117*   ■ **(b) Due Diligence Period: Buyer** will, at **Buyer's** expense and within _30_ days from Effective Date ("Due
118   Diligence Period"), determine whether the Property is suitable, in **Buyer's** sole and absolute discretion, for **Buyer's**
119   intended use and development of the Property as specified in Paragraph 6. During the Due Diligence Period,
120   **Buyer** may conduct any tests, analyses, surveys and investigations ("Inspections") which **Buyer** deems necessary
121   to determine to **Buyer's** satisfaction the Property's engineering, architectural, environmental properties; zoning and
122   zoning restrictions; flood zone designation and restrictions; subdivision regulations; soil and grade; availability of
123   access to public roads, water, and other utilities; consistency with local, state and regional growth management and
124   comprehensive land use plans; availability of permits, government approvals and licenses; compliance with
125   American with Disabilities Act; absence of asbestos, soil and ground water contamination; and other inspections
126   that **Buyer** deems appropriate to determine the suitability of the Property for **Buyer's** intended use and
127   development. **Buyer** will deliver written notice to **Seller** prior to the expiration of the Due Diligence Period of
128   **Buyer's** determination of whether or not the Property is acceptable. **Buyer's** failure to comply with this notice
129   requirement will constitute acceptance of the Property in its present "as is" condition. **Seller** grants to **Buyer**, its
130   agents, contractors and assigns, the right to enter the Property at any time during the Due Diligence Period for the
131   purpose of conducting Inspections; provided, however, that **Buyer**, its agents, contractors and assigns enter the
132   Property and conduct Inspections at their own risk. **Buyer** will indemnify and hold **Seller** harmless from losses,
133   damages, costs, claims and expenses of any nature, including attorneys' fees at all levels, and from liability to any
134   person, arising from the conduct of any and all inspections or any work authorized by **Buyer**. **Buyer** will not engage
135   in any activity that could result in a mechanic's lien being filed against the Property without **Seller's** prior written
136   consent. In the event this transaction does not close, (1) **Buyer** will repair all damages to the Property resulting
137   from the Inspections and return the Property to the condition it was in prior to conduct of the Inspections, and
138   (2) **Buyer** will, at **Buyer's** expense release to **Seller** all reports and other work generated as a result of the
139   Inspections. Should **Buyer** deliver timely notice that the Property is not acceptable, **Seller** agrees that **Buyer's**
140   deposit will be immediately returned to **Buyer** and the Contract terminated.

141   **(c) Walk-through Inspection: Buyer** may, on the day prior to closing or any other time mutually agreeable to the

142* **Buyer** (____) (____) and **Seller** (____) (____) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.

143 parties, conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and
144 to ensure that all Property is on the premises.

145 **8. OPERATION OF PROPERTY DURING CONTRACT PERIOD: Seller** will continue to operate the Property and any
146 business conducted on the Property in the manner operated prior to Contract and will take no action that would
147 adversely impact the Property, tenants, lenders or business, if any. Any changes, such as renting vacant space, that
148* materially affect the Property or **Buyer's** intended use of the Property will be permitted ☐ only with **Buyer's** consent
149* ■ without **Buyer's** consent.

150 **9. CLOSING PROCEDURE:** Unless otherwise agreed or stated herein, closing procedure shall be in accordance with
151 the norms where the Property is located.

152 **(a) Possession and Occupancy: Seller** will deliver possession and occupancy of the Property to **Buyer** at
153 closing. **Seller** will provide keys, remote controls, and any security/access codes necessary to operate all locks,
154 mailboxes, and security systems.

155 **(b) Costs: Buyer** will pay **Buyer's** attorneys' fees, taxes and recording fees on notes, mortgages and financing
156 statements and recording fees for the deed. **Seller** will pay **Seller's** attorneys' fees, taxes on the deed and
157 recording fees for documents needed to cure title defects. If **Seller** is obligated to discharge any encumbrance at or
158 prior to closing and fails to do so, **Buyer** may use purchase proceeds to satisfy the encumbrances.

159 **(c) Documents: Seller** will provide the deed; bill of sale; mechanic's lien affidavit; originals of those assignable
160 service and maintenance contracts that will be assumed by **Buyer** after the Closing Date and letters to each
161 service contractor from **Seller** advising each of them of the sale of the Property and, if applicable, the transfer of its
162 contract, and any assignable warranties or guarantees received or held by **Seller** from any manufacturer,
163 contractor, subcontractor, or material supplier in connection with the Property; current copies of the condominium
164 documents, if applicable; assignments of leases, updated rent roll; tenant and lender estoppels letters; tenant
165 subordination, non-disturbance and attornment agreements (SNDAs) required by the **Buyer** or **Buyer's** lender;
166 assignments of permits and licenses; corrective instruments; and letters notifying tenants of the change in
167 ownership/rental agent. If any tenant refuses to execute an estoppels letter, **Seller** will certify that information
168 regarding the tenant's lease is correct. If **Seller** is an entity, **Seller** will deliver a resolution of its Board of Directors
169 authorizing the sale and delivery of the deed and certification by the appropriate party certifying the resolution and
170 setting forth facts showing the conveyance conforms to the requirements of local law. **Seller** will transfer security
171 deposits to **Buyer. Buyer** will provide the closing statement, mortgages and notes, security agreements, and
172 financing statements.

173 **(d) Taxes and Prorations:** Real estate taxes, personal property taxes on any tangible personal property, bond
174 payments assumed by **Buyer**, interest, rents (based on actual collected rents), association dues, insurance
175 premiums acceptable to **Buyer**, and operating expenses will be prorated through the day before closing. If the
176 amount of taxes for the current year cannot be ascertained, rates for the previous year will be used with due
177 allowance being made for improvements and exemptions. Any tax proration based on an estimate will, at request
178 of either party, be readjusted upon receipt of current year's tax bill; this provision will survive closing.

179 **(e) Special Assessment Liens:** Certified, confirmed, and ratified special assessment liens as of the Closing Date
180 will be paid by **Seller**. If a certified, confirmed, and ratified special assessment is payable in installments, **Seller** will
181 pay all installments due and payable on or before the Closing Date, with any installment for any period extending
182 beyond the Closing Date prorated, and **Buyer** will assume all installments that become due and payable after the
183 Closing Date. **Buyer** will be responsible for all assessments of any kind which become due and owing after Closing
184 Date, unless an improvement is substantially completed as of Closing Date. If an improvement is substantially
185 completed as of the Closing Date but has not resulted in a lien before closing, **Seller** will pay the amount of the last
186 estimate of the assessment. This subsection applies to special assessment liens imposed by a public body and
187 does not apply to condominium association special assessments.

188 **(f) Foreign Investment in Real Property Tax Act (FIRPTA):** If **Seller** is a "foreign person" as defined by FIRPTA,
189 **Seller** and **Buyer** agree to comply with Section 1445 of the Internal Revenue Code. **Seller** and **Buyer** will
190 complete, execute, and deliver as directed any instrument, affidavit, or statement reasonably necessary to comply
191 with the FIRPTA requirements, including delivery of their respective federal taxpayer identification numbers or

192* Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 4 of 8 Pages.

CC-4  Rev. 12/10  ©2010  Florida Association of REALTORS©  All Rights Reserved

Serial#: 098391-500140-8990181

formsimplicity

Social Security Numbers to the closing agent. If **Buyer** does not pay sufficient cash at closing to meet the withholding requirement, **Seller** will deliver to **Buyer** at closing the additional cash necessary to satisfy the requirement.

**10. ESCROW AGENT: Seller** and **Buyer** authorize Escrow Agent or Closing Agent (collectively "Agent") to receive, deposit, and hold funds and other property in escrow and, subject to collection, disburse them in accordance with the terms of this Contract. The parties agree that Agent will not be liable to any person for misdelivery of escrowed items to **Seller** or **Buyer**, unless the misdelivery is due to Agent's willful breach of this Contract or gross negligence. If Agent has doubt as to Agent's duties or obligations under this Contract, Agent may, at Agent's option, (a) hold the escrowed items until the parties mutually agree to its disbursement or until a court of competent jurisdiction or arbitrator determines the rights of the parties or (b) deposit the escrowed items with the clerk of the court having jurisdiction over the matter and file an action in interpleader. Upon notifying the parties of such action, Agent will be released from all liability except for the duty to account for items previously delivered out of escrow. If Agent is a licensed real estate broker, Agent will comply with Chapter 475, Florida Statutes. In any suit in which Agent interpleads the escrowed items or is made a party because of acting as Agent hereunder, Agent will recover reasonable attorney's fees and costs incurred, with these amounts to be paid from and out of the escrowed items and charged and awarded as court costs in favor of the prevailing party.

**11. CURE PERIOD:** Prior to any claim for default being made, a party will have an opportunity to cure any alleged default. If a party fails to comply with any provision of this Contract, the other party will deliver written notice to the non-complying party specifying the non-compliance. The non-complying party will have ___ days (5 days if left blank) after delivery of such notice to cure the non-compliance. Notice and cure shall not apply to failure to close.

**12. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is not met and **Buyer** has timely given any required notice regarding the condition having not been met, **Buyer's** deposit will be returned in accordance with applicable Florida Laws and regulations.

**13. DEFAULT:**

(a) In the event the sale is not closed due to any default or failure on the part of **Seller** other than failure to make the title marketable after diligent effort, **Buyer** may either (1) receive a refund of **Buyer's** deposit(s) or (2) seek specific performance. If **Buyer** elects a deposit refund, **Seller** will be liable to Broker for the full amount of the brokerage fee.

(b) In the event the sale is not closed due to any default or failure on the part of **Buyer**, **Seller** may either (1) retain all deposit(s) paid or agreed to be paid by **Buyer** as agreed upon liquidated damages, consideration for the execution of this Contract, and in full settlement of any claims, upon which this Contract will terminate or (2) seek specific performance. If **Seller** retains the deposit, **Seller** will pay the Brokers named in Paragraph 20 fifty percent of all forfeited deposits retained by **Seller** (to be split equally among the Brokers) up to the full amount of the brokerage fee. If **Buyer** fails to timely place a deposit as required by this Contract, **Seller** may either (1) terminate the Contract and seek the remedy outlined in this subparagraph or (2) proceed with the Contract without waiving any remedy for **Buyer's** default.

**14. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the prevailing party, which for purposes of this provision will include **Buyer**, **Seller** and Broker, will be awarded reasonable attorneys' fees, costs, and expenses.

**15. NOTICES:** All notices will be in writing and may be delivered by mail, overnight courier, personal delivery, or electronic means. Parties agree to send all notices to addresses specified on the signature page(s). Any notice, document, or item given by or delivered to an attorney or real estate licensee (including a transaction broker) representing a party will be as effective as if given by or delivered to that party.

**16. DISCLOSURES:**

(a) **Commercial Real Estate Sales Commission Lien Act:** The Florida Commercial Real Estate Sales Commission Lien Act provides that a broker has a lien upon the owner's net proceeds from the sale of commercial real estate for any commission earned by the broker under a brokerage agreement. The lien upon the owner's net

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 5 of 8 Pages.

241 proceeds is a lien upon personal property which attaches to the owner's net proceeds and does not attach to any
242 interest in real property. This lien right cannot be waived before the commission is earned.

243 **(b) Special Assessment Liens Imposed by Public Body:** The Property may be subject to unpaid special
244 assessment lien(s) imposed by a public body. (A public body includes a Community Development District.) Such
245 liens, if any, shall be paid as set forth in Paragraph 9(e).

246 **(c) Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in
247 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
248 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon
249 and radon testing may be obtained from your county public health unit.

250 **(d) Energy-Efficiency Rating Information: Buyer** acknowledges receipt of the information brochure required by
251 Section 553.996, Florida Statutes.

252 **17. RISK OF LOSS:**

253 (a) If, after the Effective Date and before closing, the Property is damaged by fire or other casualty, **Seller** will bear
254 the risk of loss and **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**.
255 Alternatively, **Buyer** will have the option of purchasing the Property at the agreed upon purchase price and **Seller**
256 will credit the deductible, if any and transfer to **Buyer** at closing any insurance proceeds, or **Seller's** claim to any
257 insurance proceeds payable for the damage. **Seller** will cooperate with and assist **Buyer** in collecting any such
258 proceeds. **Seller** shall not settle any insurance claim for damage caused by casualty without the consent of the
259 **Buyer**.

260 (b) If, after the Effective Date and before closing, any part of the Property is taken in condemnation or under the
261 right of eminent domain, or proceedings for such taking will be pending or threatened, **Buyer** may cancel this
262 Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of
263 purchasing what is left of the Property at the agreed upon purchase price and **Seller** will transfer to the **Buyer** at
264 closing the proceeds of any award, or **Seller's** claim to any award payable for the taking. **Seller** will cooperate with
265 and assist **Buyer** in collecting any such award.

266* **18. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ■ is
267* not assignable ☐ is assignable. If this Contract may be assigned, **Buyer** shall deliver a copy of the assignment
268 agreement to the **Seller** at least 5 days prior to Closing. The terms **"Buyer," "Seller"** and **"Broker"** may be singular or
269 plural. This Contract is binding upon **Buyer, Seller** and their heirs, personal representatives, successors and assigns
270 (if assignment is permitted).

271 **19. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between **Buyer** and **Seller**.
272 Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound.
273 Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated
274 electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or
275 typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract
276 is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be
277 construed under Florida law and will not be recorded in any public records.

278 **20. BROKERS:** Neither **Seller** nor **Buyer** has used the services of, or for any other reason owes compensation to,
279 a licensed real estate Broker other than:

280* **(a) Seller's Broker:** _____ ,
281                                          (Company Name)                                        (Licensee)
282* _____ ,
283                                    (Address, Telephone, Fax, E-mail)

284* who ☐ is a single agent ☐ is a transaction broker ☐ has no brokerage relationship and who will be compensated
285* by ☐ Seller ☐ Buyer ☐ both parties pursuant to ☐ a listing agreement ☐ other (specify) _____

286* _____

287* Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.

CC-4   Rev. 12/10   ©2010   Florida Association of REALTORS©   All Rights Reserved

formsimplicity

Serial#: 098391-500140-8990181

288* **(b) Buyer's Broker:** _____,
289                          (Company Name)                    (Licensee)
290* _____,
291                      (Address, Telephone, Fax, E-mail)
292* who ☐ is a single agent ☐ is a transaction broker ☐ has no brokerage relationship and who will be compensated
293* by ☐ Seller's Broker ■ Seller ☐ Buyer ☐ both parties pursuant to ☐ an MLS offer of compensation ☐ other (specify)
294* _____
295 (collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to
296 inquiries, introductions, consultations, and negotiations resulting in this transaction. **Seller** and **Buyer** agree to
297 indemnify and hold Broker harmless from and against losses, damages, costs and expenses of any kind, including
298 reasonable attorneys' fees at all levels, and from liability to any person, arising from (1) compensation claimed which is
299 inconsistent with the representation in this Paragraph, (2) enforcement action to collect a brokerage fee pursuant to
300 Paragraph 10, (3) any duty accepted by Broker at the request of **Seller** or **Buyer**, which is beyond the scope of
301 services regulated by Chapter 475, Florida Statutes, as amended, or (4) recommendations of or services provided and
302 expenses incurred by any third party whom Broker refers, recommends, or retains for or on behalf of **Seller** or **Buyer**.

303 **21. OPTIONAL CLAUSES:** (Check if any of the following clauses are applicable and are attached as an addendum to
304 this Contract):
305* ☐ Arbitration                    ☐ Seller Warranty                ☐ Existing Mortgage
306* ☐ Section 1031 Exchange          ☐ Coastal Construction Control Line ☐ Buyer's Attorney Approval
307* ☐ Property Inspection and Repair ☐ Flood Area Hazard Zone         ☐ Seller's Attorney Approval
308* ☐ Seller Representations         ☐ Seller Financing               ☐ Other _____

309 **22. ADDITIONAL TERMS:**
310* Seller to repair roof prior to closing or assign insurance proceeds relating to roof to Buyer at Closing.
311* _____
312* _____
313* _____
314* _____
315* _____
316* _____
317* _____
318* _____
319* _____
320* _____

321 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
322 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL**
323 **FACTS AND REPRESENTATIONS THAT ARE IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE**
324 **PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE, INTERPRETING CONTRACTS, DETERMINING THE**
325 **EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF TITLE, FOREIGN INVESTOR**
326 **REPORTING REQUIREMENTS, ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND OTHER**
327 **ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL**
328 **REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER**
329 **REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF**
330 **THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS**
331 **AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE**
332 **AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.**

333* Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 7 of 8 Pages.

CC-4   Rev. 12/10   ©2010   Florida Association of REALTORS®   All Rights Reserved

Serial#: 098391-500140-8990181

formsimplicity

334 Each person signing this Contract on behalf of a party that is a business entity represents and warrants to the other
335 party that such signatory has full power and authority to enter into and perform this Contract in accordance with its
336 terms and each person executing this Contract and other documents on behalf of such party has been duly authorized
337 to do so.

338* **Orlando Group Investments, LLC**    Date: _____
339
340* **Carl Souffrant**    Tax ID No: _____
341 (Typed or Printed Name of **Buyer**)
342* Title: **Member Manager**    Telephone: 407-579-0650
343* _[signature]_    Date: 2/13/25
344 (Signature of **Buyer**)
345* _Carl Souffrant_
346 (Typed or Printed Name of **Buyer**)
347* Title: _____    Telephone: _____
348* **Buyer's** Address for purpose of notice: 5253 N Powers Drive, Orlando, Florida 32818
349* Facsimile: _____    Email: _____

350* **King State Coffee, LLC**    Date: _____
351
352* **Timothy F. McTague**    Tax ID No: _____
353 (Typed or Printed Name of **Seller**)
354* Title: **Manager**    Telephone: _____
355* _Timothy F. McTague_ (DocuSigned)    Date: 2/13/2025
356 (Signature of **Seller**)
357* _____    Tax ID No: _____
358 (Typed or Printed Name of **Seller**)
359* Title: _____    Telephone: _____
360* **Seller's** Address for purpose of notice: 16703 East Course Drive, Tampa, Florida 33624
361* Facsimile: _____    Email: _____

The Florida Association of REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics.
The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

362* **Buyer** (____) (____) and **Seller** (____) (____) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

# EXHIBIT A

## Legal Description

Lot 9, less the North 20 feet thereof, Lot 10, Lesss the North 20 feet of the East 24 feet thereof, and all of Lots 11 and 12, Block 2, Central Park, according to the Plat thereof, recorded in Plat Book 8, Page(s) 14, of the Public Records of Hillsborough County, Florida.

```
Label Matrix for local noticing          BayFirst National Bank, N.A.              BayFirst National Bank, NA
113A-8                                    c/o Stephanie C. Lieb, Esq.               700 Central Avenue
Case 8:24-bk-00576-CPM                    101 East Kennedy Boulevard, Suite 2700    Saint Petersburg, FL 33701-3631
Middle District of Florida                Tampa, Florida 33602-5150
Tampa
Thu Feb 20 16:16:15 EST 2025

Blue Bridge Financial, LLC                Hillsborough County Tax Collector         IPFS Corporation
11921 Freedom Drive                       c/o Brian T. FitzGerald, Esq.             30 Montgomery Street
Suite 1130                                Hillsborough County Attorney Office       Suite 501
Reston, VA 20190-6225                     P.O. Box 1110, 27th Floor                 Jersey City, NJ 07302-3821
                                          Tampa, FL 33601-1110


Keg Connect, LLC                          Nancy C Millan Tax Collector              Pawee
701 Dr. MLK Jr. St. S.                    C/O Brian T Fitzgerald, Atty 27th FL      550 1st Avenue N.
Saint Petersburg, FL 33705-1922           Po Box 1110                               Saint Petersburg, FL 33701-3702
                                          Tampa, FL  33601-1110



SystmatiQ Accounting
Attn: Neeta Hemlall
390 Myrtle Ave
Brooklyn, NY 11205-2411
```

              The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


```
(u)Cavoya Coffee                          End of Label Matrix
                                          Mailable recipients   9
                                          Bypassed recipients   1
                                          Total                10
```